**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| IN RE KI LIQUIDATION, INC., | : | Bankruptcy No. 05-60002 (KCF) |
| f/k/a KULLMAN INDUSTRIES, INC., | : | Adv. Proc. Nos. 06-1023 (KCF), |
| | : | 06-1026 (KCF) |
| Debtor. | : | |
| _____ | : | |
| | : | |
| CORONATION SHEET METAL CO., | : | CIVIL ACTION NO. 08-611 (MLC) |
| INC., et al., | : | |
| | : | |
| Appellants, | : | **MEMORANDUM OPINION** |
| | : | |
| v. | : | |
| | : | |
| INTERCHANGE BANK, et al., | : | |
| | : | |
| Appellees. | : | |
| _____ | : | |

**COOPER, District Judge**

KI Liquidation, Inc., f/k/a Kullman Industries, Inc. ("KI")
filed a voluntary petition under chapter 11 of the United States
Bankruptcy Code, 11 U.S.C. § ("Section") 101, et seq.
("Bankruptcy Code"), on October 17, 2005.  See Bankr. No. 05-
60002 (KCF), dkt. entry no. 1, Pet.  Creditors Coronation Sheet
Metal Co., Inc. ("Coronation"), and Cooper Electric Supply Co.
("Cooper Electric") and Turtle & Hughes, Inc. ("Turtle")
(collectively, "appellants") filed separate adversary proceedings
against KI, TD Banknorth (successor in interest to Interchange
Bank) ("Interchange"), and Robert Kullman ("Kullman").  See Adv.
Proc. No. 06-1023 (KCF), dkt. entry no. 1, Cooper Electric &
Turtle Compl.; Adv. Proc. No. 06-1026 (KCF), dkt. entry no. 1,

Coronation Compl.  All parties moved separately for summary
judgment.  <u>See</u> Adv. Proc. No. 06-1026 (KCF), dkt. entry no. 65,
Coronation Mot. for Summ. J.; <u>id.</u>, dkt. entry no. 66, Kullman
Mot. for Summ. J.; <u>id.</u>, dkt. entry no. 68, Interchange Mot. for
Summ. J.; <u>id.</u>, dkt. entry no. 70, KI Mot. for Summ. J.; <u>id.</u>, dkt.
entry no. 73, Cooper Electric & Turtle Mot. for Summ. J.  On
January 4, 2008, the United States Bankruptcy Court for the
District of New Jersey ("Bankruptcy Court") granted summary
judgment in favor of KI, Interchange, and Kullman, and denied
summary judgment to appellants ("1-4-08 Order").  <u>See id.</u>, dkt.
entry no. 101, 1-4-08 Order.  Appellants now appeal from the 1-4-
08 Order.  <u>See id.</u>, dkt. entry no. 103, Cooper Electric & Turtle
Not. of Appeal; <u>id.</u>, dkt. entry no. 106, Coronation Not. of
Appeal.  For the reasons stated herein, the Court will affirm the
1-4-08 Order.

**BACKGROUND**

**I.   Factual Background and Procedural History**

In or around 2003 the United States ("Government") awarded
KI a contract ("Contract") to build a United States Embassy in
Tajikistan ("Embassy Project").  (Dkt. entry no. 14, Interchange
Br. at 5.)  The Contract did not include an express provision
that funds paid by the Government to KI were to be held in trust
for KI's subcontractors or suppliers.  (<u>See id.</u>)  The Contract
included a provision requiring KI to submit to the Government a

2

certification with each request for progress payment.  (Dkt. entry no. 8, Coronation Br. at 11.)  The required certification states that "[p]ayments to subcontractors and suppliers have been made from previous payments received under the contract, and timely payments will be made from the proceeds of the payment covered by this certification, in accordance with subcontract agreements and the requirements of chapter 39 of Title 31, United States Code."  (Id. (emphasis omitted) (quoting Federal Acquisition Requisition clause 52.232-5).)  The Government waived the Miller Act requirement that KI obtain payment and performance bonds for the Contract.  (Interchange Br. at 6.; dkt. entry no. 15, KI Br. at 6.)  Coronation contracted with KI in 2003 to provide the fabrication and installation of HVAC ductwork on the Embassy Project.  See Adv. Proc. No. 06-1026 (KCF), dkt. entry no. 99, 12-12-07 Mem. Op. at 4.  Cooper Electric and Turtle also contracted with KI to provide electrical materials for the Embassy Project.  (Dkt. entry no. 9, Cooper Electric & Turtle Br. at 4.)

Interchange lent KI over $5 million in 2003, and the loans were secured by liens on KI's assets, including its bank accounts.  (Interchange Br. at 4.)  As part of the loan terms, KI maintained a bank account at Interchange.  (Id.)  Interchange debited KI's account each month and applied the debited amounts to KI's outstanding loans.  (Id.)  Prior to June of 2005, the

3

Government made thirty-seven progress payments to KI, all of which were made to KI's accounts at either Fleet Bank or Unity Bank ("Unity").  (Id. at 6-7.)  KI transferred funds from its Unity account into its Interchange account.  (Id. at 7.)

KI encountered difficulties on the Embassy Project in late 2004 and fell behind on its payments to subcontractors and material providers, including appellants.  (Id. at 9; Coronation Br. at 7-8.)  Because of a dispute, the Government terminated KI's contract for the Embassy Project and ceased making progress payments in June of 2005.  (KI Br. at 7.)  In October of 2005, Interchange declared KI's loans to be in default and swept KI's account of almost $1 million.  (Interchange Br. at 9.)  Shortly thereafter, KI filed for bankruptcy.  (Kullman Br. at 6.) Appellants have not been fully paid on their contracts with KI for their work on the Embassy Project.  (Id.)

Coronation brought an adversary proceeding against KI, Kullman, and Interchange seeking, inter alia, a judgment declaring that (1) the funds KI received from the Government for work on the Embassy Project were trust funds held for Coronation and other vendors and are not part of KI's bankruptcy estate, (2) Interchange is holding trust funds for the benefit of Coronation and other vendors to the extent of the funds it received from KI that were paid on the Embassy Project, (3) Interchange wrongfully converted trust funds for which it is liable to Coronation, and

4

(4) Kullman participated in the wrongful diversion of trust funds.  See Adv. Proc. No. 06-1026 (KCF), dkt. entry no. 17, Coronation Am. Compl. at ¶¶ 32-83.  Cooper Electric and Turtle also brought adversary proceedings against KI, Kullman, and Interchange seeking, inter alia, a judgment (1) awarding damages for the unpaid materials supplied to the Embassy Project, (2) determining the amount of trust funds each defendant received, and (3) directing the defendants to disgorge and pay Cooper Electric and Turtle their pro rata shares of the trust funds. See Adv. Proc. No. 06-1023 (KCF), dkt. entry no. 29, Cooper Electric & Turtle 2d Am. Compl. at ¶¶ 10-73.  The adversary proceeding initiated by Cooper Electric and Turtle was consolidated with the adversary proceeding brought by Coronation. See Adv. Proc. No. 06-1026 (KCF), dkt. entry no. 20, 12-12-06 Order.

All parties moved separately for summary judgment.  See supra p. 2.  After holding a hearing on October 15, 2007, the Bankruptcy Court entered an order, inter alia, (1) granting summary judgment to KI, Kullman, and Interchange, (2) denying summary judgment to appellants, and (3) dismissing both adversary proceedings with prejudice.  See 1-4-08 Order.  Appellants now appeal from the 1-4-08 Order, arguing, inter alia, that the Bankruptcy Court erred in (1) concluding that payments KI received from the Government on the Embassy Project are not

subject to a constructive or equitable trust, (2) applying the
lowest intermediate balance test to this action, (3) determining
that Kullman was not individually liable for breach of trust by
diverting trust funds, and (4) failing to hold Interchange liable
for knowingly receiving the trust funds.  (See Coronation Br. at
23, 30, 32, 35; Cooper Electric & Turtle Br. at 7, 18, 23.)

## II.  **The Bankruptcy Court's Opinion of December 12, 2007**

The Bankruptcy Court, applying state law, concluded that a
trust was not established between KI and the appellants.  See 12-
12-07 Mem. Op. at 10.  The Bankruptcy Court found that KI did not
engage in wrongful conduct, a requirement for a constructive
trust, noting that "Coronation has not pointed to any contractual
or statutory provision that precluded KI from paying its general
operative expenses from its general operating funds."  Id.
Further, the Bankruptcy Court determined that Coronation failed
to show that the alleged trust funds, which were commingled, were
clearly traceable or identifiable.  Id. at 10-11.

The Bankruptcy Court also distinguished Universal Bonding
Insurance Co. v. Gittens & Sprinkle Enterprises, Inc., 960 F.2d
366 (3d Cir. 1992) and Reliance Insurance Co. v. Lott Group,
Inc., 851 A.2d 766 (N.J. App. Div. 2004) on the facts.  Id. at
11.  Noting that, in contrast to this action, both Universal
Bonding and Reliance involved sureties, the Bankruptcy Court
stated that a "surety has the right to recover from a general

6

contractor because of the contract entered into by the two parties, and not because the surety stands in the shoes of the sub-contractor." Id. at 11, 15.

Based on its determination that a trust fund does not exist, the Bankruptcy Court also concluded that KI and Kullman did not breach any trust obligations to appellants. Id. at 12-13. The Bankruptcy Court reasoned that neither KI nor Kullman diverted funds with the intent to avoid paying appellants; rather, they merely used the funds to pay vendors in an effort to continue operating the business. Id. at 13, 15.

**DISCUSSION**

**I.  Jurisdiction and Standard of Review**

A district court has appellate jurisdiction over a bankruptcy court's final judgments, orders, and decrees. 28 U.S.C. § 158(a). A district court reviews a "bankruptcy court's legal determinations de novo, its factual findings for clear error, and its exercise of discretion for abuse thereof." Hefta v. Official Comm. of Unsecured Creditors (In re Am. Classic Voyages Co.), 405 F.3d 127, 130 (3d Cir. 2005) (quotation and citation omitted); see Fed.R.Bankr.P. 8013 ("On an appeal the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly

7

erroneous . . . .").  Also, the Court, when addressing mixed questions of law and fact, divides the questions into their respective components and applies the appropriate standard to each.  In re Brown, 951 F.2d 564, 567 (3d Cir. 1991).

## II.  Legal Standards

### A.  Summary Judgment Standard

Bankruptcy Rule 7056 states that Federal Rule of Civil Procedure ("Rule") 56 applies in bankruptcy adversary proceedings.  Fed.R.Bankr.P. 7056.  Rule 56 states that summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c). The movant bears the initial burden of showing that there is no genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the movant has met this prima facie burden, the non-movant must "set out specific facts showing a genuine issue for trial."  Fed.R.Civ.P. 56(e)(2).  A non-movant must present actual evidence that raises a genuine issue of material fact and may not rely on mere allegations.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The Court must view the evidence in the light most favorable to the non-movant when deciding a summary judgment motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S.

574, 587 (1986).  At the summary judgment stage, the Court's role

is "not . . . to weigh the evidence and determine the truth of

the matter but to determine whether there is a genuine issue for

trial."  Anderson, 477 U.S. at 249.  Under this standard, the

"mere existence of a scintilla of evidence in support of the

[non-movant's] position will be insufficient [to defeat a Rule

56(c) motion]; there must be evidence on which the jury could

reasonably find for the [non-movant]."  Id. at 252.  "By its very

terms, this standard provides that the mere existence of some

alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the

requirement is that there be no genuine issue of material fact."

Id. at 247-48.  A fact is material only if it might affect the

action's outcome under governing law.  Id. at 248.  "[T]here is

no issue for trial unless there is sufficient evidence favoring

the nonmoving party for a jury to return a verdict for that

party.  If the evidence is merely colorable, or is not

significantly probative, summary judgment may be granted."  Id. at

249-50 (internal citations omitted).

### B.    Trust Law and the Bankruptcy Code

Section 541(d) of the Bankruptcy Code provides that

> Property in which the debtor holds, as of the
> commencement of the case, only legal title and not an
> equitable interest . . . becomes property of the estate
> . . . only to the extent of the debtor's legal title to
> such property, but not to the extent of any equitable

interest in such property that the debtor does not
hold.

11 U.S.C. § 541(d).  Thus, trust funds to which the debtor has
only legal title are not included in the debtor's bankruptcy
estate.  See id.; see also Pearlman v. Reliance Ins. Co., 371
U.S. 132, 135-36 (1962) ("The Bankruptcy Act simply does not
authorize a trustee to distribute other people's property among a
bankrupt's creditors."); Universal Bonding Ins. Co. v. Gittens &
Sprinkle Enters., Inc., 960 F.2d 366, 371 (3d Cir. 1992).  A
plaintiff claiming trust benefits must (1) show "that the trust
relationship and its legal source exist, and (2) identify and
trace the trust funds if they are commingled."  City of Farrell
v. Sharon Steel Corp., 41 F.3d 92, 95 (3d Cir. 1994) (quotation
and citation omitted); Goldberg v. N.J. Lawyers' Fund for Client
Protection, 932 F.2d 273, 280 (3d Cir. 1991).  State law
generally determines the existence of a trust relationship, while
federal law applies to identification and tracing of the
commingled trust funds.  Farrell, 41 F.3d at 95; Goldberg, 932
F.2d at 280; see also First Indem. of Am. Ins. Co. v. Modular
Structures, Inc. (In re Modular Structures, Inc.), 27 F.3d 72, 77
(3d Cir. 1994) (applying state law to determine whether the funds
at issue are property of the bankruptcy estate).

A constructive trust is a remedial device employed "[w]hen
property has been acquired in such circumstances that the holder
of the legal title may not in good conscience retain the

10

beneficial interest." Flanigan v. Munson, 818 A.2d 1275, 1281 (N.J. 2003). To impose a trust, a court must find that the recipient (1) obtained the property through a wrongful act, and (2) will be unjustly enriched by retaining the property. Id.; Thompson v. City of Atl. City, 901 A.2d 428, 438 (N.J. App. Div. 2006), aff'd as modified, 921 A.2d 427 (N.J. 2007). A wrongful act sufficient for the imposition of a constructive trust includes fraud, mistake, undue influence, or breach of a confidential relationship that causes a transfer of property. D'Ippolito v. Castoro, 242 A.2d 617, 619 (N.J. 1968); Thompson, 901 A.2d at 439. A "breach of contract alone is not sufficient and does not qualify as the type of wrongful act or fraud which would warrant the imposition of a constructive trust." Presten v. Sailer, 542 A.2d 7, 15 (N.J. App. Div. 1988); see Del. River & Bay Auth. v. York Hunter Constr., Inc., 781 A.2d 1126, 1131 n.5 (N.J. Super. Ct. 2001). Where the above requirements are met, the court converts the recipient into a trustee and requires the property be accounted for in whatever manner the court deems just and fair. Thompson, 901 A.2d at 439.

A plaintiff claiming trust benefits must identify and trace the alleged trust funds if they are commingled. Goldberg, 932 F.2d at 280; see also Official Comm. of Unsecured Creditors of the Columbia Gas Transmission Corp. v. Columbia Gas Sys. Inc. (In re Columbia Gas Sys. Inc.), 997 F.2d 1039, 1063 (3d Cir. 1993)

11

("[B]eneficiaries of trust funds bear the burden of identifying and tracing their trust property."). This requirement protects the interests of secured and unsecured creditors. In re Columbia Gas Sys. Inc., 997 F.2d at 1063. Where trust funds are commingled with non-trust funds, the lowest intermediate balance test is used to trace the trust funds. Id. Under this test, the trust beneficiary may "assume that trust funds are withdrawn last from a commingled account." Id. However, trust money that has been removed from the commingled account is not replenished by subsequent deposits. Id. "Therefore, the lowest intermediate balance in a commingled account represents trust funds that have never been dissipated and which are reasonably identifiable." Id. Trust beneficiaries lose all rights in the trust funds when the commingled account is entirely dissipated. Id. at 1064.

## III. Legal Standards Applied Here

### A.   Existence of a Trust Relationship

#### 1.   Existence of a Constructive Trust

Appellants argue that the Bankruptcy Court erred in its conclusion that the progress payments made to KI for work on the Embassy Project were not trust funds held for appellants' benefit. (Coronation Br. at 23-30; Cooper Electric & Turtle Br. at 7-14.) Specifically, Coronation argues that KI committed a wrongful act by submitting false certifications to the Government to procure progress payments, and that KI, Kullman, and

12

Interchange were unjustly enriched "by the diversion of funds."
(Coronation Br. at 24-25, 29.)  Cooper Electric and Turtle
contend that the Bankruptcy Court erred by ignoring the
applicable federal law and, instead, applying incorrect state law
in determining that no trust existed.  (Cooper Electric & Turtle
Br. at 11-13.)  The Court, however, finds that the Bankruptcy
Court correctly determined that a constructive trust does not
exist with respect to the progress payments made from the
Government to KI for work on the Embassy Project and appellants
have not established their rights as trust recipients.

KI did not obtain the alleged trust funds through a wrongful
act, as is required for the imposition of a constructive trust.
See Flanigan, 818 A.2d at 1281; Thompson, 901 A.2d at 438.[1]  The
wrongful act alleged by Coronation - submitting false
certifications to the Government - is merely a breach of
contract.  The Contract required that KI make certain
certifications to the Government in order to receive its progress
payments.  (See Coronation Br. at 11.)  If KI did not make those
certifications or made false certifications, then it breached the
Contract.  Breach of a contract, however, does not qualify as a
wrongful act necessary for the imposition of a constructive
trust.  See Presten, 542 A.2d at 15; Del. River & Bay Auth., 781

---

[1]  Appellants do not contend that an express statutory or
contractual trust exists.  (See, e.g., dkt. entry no. 20,
Coronation Reply Br. at 2.)

A.2d at 1131 n.5.  Further, Coronation has not identified any statute or regulation that the submission of false certifications would violate.  (Coronation Br. at 25 (alleging only that KI's provision of false certifications "might well violate federal statutes").)  Because appellants failed to show that KI obtained the progress payments through a wrongful act, as is required for the imposition of a constructive trust, the Bankruptcy Court correctly determined that a constructive trust does not exist. See 12-12-07 Mem. Op. at 10-11.

Coronation argues that KI violated 31 U.S.C. § ("Section") 3905(b)(1) of the Prompt Payment Act by failing to pay its subcontractors within seven days of receiving progress payments from the Government.  (Coronation Br. at 25-26.)  Coronation, however, misreads Section 3905(b)(1) in making this argument. Section 3905(b)(1) provides that

> Each construction contract awarded by an agency shall include a clause that requires the prime contractor to include in each subcontract for property or services entered into by the prime contractor and a subcontractor (including a material supplier) for the purpose of performing such construction contract --
> > (1) a payment clause which obligates the prime contractor to pay the subcontractor for satisfactory performance under its subcontract within 7 days out of such amounts as are paid to the prime contractor by the agency under such contract . . . .

31 U.S.C. § 3905(b)(1).  Thus, Section 3905 merely requires that the prime contractor's contract with the subcontractor include the specified payment clause.  See id.  Section 3905 itself does

14

not require the prime contractor to actually make payments to the subcontractor within seven days of receiving its payments from the Government.  See id.  Therefore, KI's failure to pay appellants within seven days of its receipt of progress payments does not violate Section 3905(b)(1).  See id.  Instead, it is a breach of the subcontract, which is insufficient to serve as the wrongful act required for the imposition of a constructive trust. See Presten, 542 A.2d at 15; Del. River & Bay Auth., 781 A.2d at 1131 n.5.

### 2.  The Lowest Intermediate Balance Test

Coronation argues that the Bankruptcy Court erred in applying the lowest intermediate balance test ("LIBT") because its application would "result in an unjust outcome."  (Coronation Br. at 30; Coronation Reply Br. at 14-15.)  Cooper Electric and Turtle assert that they adequately identified and traced the alleged trust funds to KI's bank account at Interchange.  (Dkt. entry no. 21, Cooper Electric & Turtle Reply Br. at 8-10.)  This Court, however, finds that the Bankruptcy Court correctly applied the LIBT and determined that appellants had not sufficiently identified and traced the alleged trust funds.

Appellants have not adequately identified and traced the alleged trust funds.  Here, the Government deposited thirty-three progress payments into KI's existing account at Unity. (Interchange Br. at 7.)  KI then transferred funds from the Unity

15

account to KI's Interchange account.  (See id. at 7; Coronation
Reply Br. at 12; Cooper Electric & Turtle Reply Br. at 9.)  Both
the accounts at Unity and Interchange were commingled accounts,
and KI wrote hundreds of checks on both accounts.  (Interchange
Br. at 7-8.)  Therefore, appellants must identify and trace the
alleged trust funds to establish their rights as trust
recipients.  See Farrell, 41 F.3d at 95; Goldberg, 932 F.2d at
280.

     Appellants identified several transfers from KI's Unity
account to KI's Interchange account that occurred shortly after
KI received progress payments in its Unity account.  (See Cooper
Electric & Turtle Reply Br. at 9.)  The transfer amounts exceeded
the amounts of the progress payments received.  (Id.)  Appellants
rely on these transfers to demonstrate that the alleged trust
funds were moved to the Interchange account.  (Id.)  Appellants
assume that because the transfer amounts exceeded the progress
payment amounts received, the transfers must have included the
progress payments.  (Id.)  In making this assertion, however,
appellants neglect to apply the LIBT.

     The LIBT assumes that trust funds are withdrawn last from a
commingled account.  In re Columbia Gas Sys. Inc., 997 F.2d at
1063; Merchs. Express Money Order Co. v. Supermkts. of
Cheltenham, Inc. (In re Supermkts. of Cheltenham, Inc.), No. 97-
35661, 1999 WL 260956, at *4 (Bankr. E.D. Pa. 1999).  Thus, the

16

critical amount for tracing purposes is the amount remaining in the Unity account after the transfer, not the amount of the transfer itself.  See In re Columbia Gas Sys. Inc., 997 F.2d at 1063; In re Supermkts. of Cheltenham, Inc., 1999 WL 260956, at *4-*5.  This is because the LIBT assumes that the trust funds are withdrawn last, meaning that after a deposit of trust funds and subsequent transfer, any funds remaining in the Unity account contain trust funds.  See In re Columbia Gas Sys. Inc., 997 F.2d at 1063; In re Supermkts. of Cheltenham, Inc., 1999 WL 260956, at *5  That is, the LIBT presumes that the trust funds are the last out, not the first out, of a commingled account, and thus not part of the immediate transfer of funds to the Interchange account.  See In re Columbia Gas Sys. Inc., 997 F.2d at 1063.

Appellants, thus, have not traced the alleged trust funds merely by identifying transfers from the Unity account to the Interchange account.  See In re Supermkts. of Cheltenham, Inc., 1999 WL 260956, at *5 (finding failure to trace trust funds where claimant neglected to trace trust funds beyond their initial deposit into the commingled account); id. at *3 ("[I]n order to effectively trace trust funds commingled with other funds, the beneficiary must do more than simply trace the trust proceeds into the trustee's bank accounts.  Where trust property is commingled with other property of the trustee . . . , the beneficiary must trace its own trust property through the

17

trustee's various dealings with it."). Because appellants failed to trace the alleged trust funds remaining in the Unity account after the transfers, they have not shown how much, if any, of such funds were actually transferred to the Interchange account. See id. at *5. Further, appellants have not traced any alleged trust funds, if there were some, once they reached the Interchange account. See id. at *3. Appellants, therefore, have not identified and traced the alleged trust funds in the commingled accounts and cannot establish their rights as trust recipients. See Farrell, 41 F.3d at 95; Goldberg, 932 F.2d at 280; see also In re Supermkts. of Cheltenham, Inc., 1999 WL 260956, at *5 (concluding that claimant's interest in untraced trust funds is that of an unsecured creditor).

The LIBT prevents appellants' recovery even if some of the alleged trust funds made it into KI's Interchange account. Interchange swept KI's bank account in October of 2005, leaving it with a zero balance. (See Interchange Br. at 9.) 12-12-07 Mem. Op. at 11. Thus, zero is the lowest intermediate balance of the alleged trust funds in the commingled Interchange account, and appellants can recover nothing. See In re Columbia Gas Sys. Inc., 997 F.2d at 1063 (stating that "beneficiaries lose all property rights in a commingled account when the account is completely dissipated"); EBS Pension, LLC v. Edison Bros. Stores, Inc. (In re Edison Bros., Inc.), 268 B.R. 409, 414 (Bankr. D.

18

Del. 2001) (concluding that under the LIBT, trust funds were completely dissipated and thus, lost to claimant where the commingled account was swept to a zero balance).

Coronation also argues that the LIBT should not be applied to this action because it would benefit Kullman and Interchange to the detriment of appellants. (Coronation Br. at 30-32.)  In adopting the LIBT, the Third Circuit Court of Appeals recognized that the test is intended to "protect the interests of secured and unsecured creditors."  See In re Columbia Gas Sys. Inc., 997 F.2d at 1064; see also Goldberg, 932 F.2d at 280 (noting that courts tend to favor pro rata distribution of funds among creditors of similar status).  Further, the Third Circuit Court of Appeals did not place limits on its adoption of or the application of the LIBT.  See In re Columbia Gas Sys. Inc., 997 F.2d at 1063-64.  Thus, the LIBT applies to this action since it involves identifying and tracing alleged trust funds in a commingled account.  See id.

### B.   Applicability of Universal Bonding

Appellants argue that the Bankruptcy Court erred in failing to follow Universal Bonding. (Coronation Br. at 28; Cooper Electric & Turtle Br. at 7-9.)  Appellants assert that the Bankruptcy Court should have applied the rule from Universal Bonding that monies paid to a contractor on a federal project must be held subject to a trust for laborers and suppliers.

19

(Coronation Br. at 28; Cooper Electric & Turtle Br. at 7.)   The Court, however, finds that the Bankruptcy Court was correct to distinguish Universal Bonding on its facts.

In Universal Bonding, the general contractor filed for bankruptcy, and then sought to collect outstanding contract balances from state, municipal, and federal agencies.  960 F.2d at 367.  The general contractor's payment and performance bond surety argued that the outstanding balances were equitable trusts for the benefit of laborers and suppliers, and thus, were not part of the general contractor's bankruptcy estate.  Id.  The surety had not yet paid the general contractor's indebtedness to the laborers and suppliers.  See id. at 374.  The Court determined that the laborers and suppliers retained their equitable interest in the outstanding funds paid to the general contractor by the federal agencies, and could enforce that interest in the funds once the funds were paid to the general contractor.  Id. at 376.[2]  The Court concluded that "once the funds are received by [the general contractor], they will constitute an equitable trust for the benefit of laborers and materialmen."  Id. at 376.

---

[2]  The Universal Bonding Court decided the status of the outstanding funds owed by state and municipal agencies under the New Jersey Trust Fund Act, which applies only to payments made by the State or any agency, commission, or department thereof.  See Universal Bonding, 960 F.2d at 370-71.

20

This action is distinguishable on its facts.[3]  In contrast
to Universal Bonding, appellants claim an equitable interest in
the regular progress payments the Government already paid to KI
over the course of the Contract.  (See Coronation Am. Compl. at
¶¶ 32-37; Cooper Electric & Turtle 2d Am. Compl. at ¶¶ 10-43.)
This is not a situation where appellants seek to assert an
equitable interest in outstanding funds that will be paid to a
bankrupt general contractor by the Government at some point in
the future.  See Universal Bonding, 960 F.2d at 367.  Rather, the
appellants here claim a retroactive equitable interest in the
regular progress payments previously made under the terms of the
Contract.  Thus, this action is factually distinguishable from
Universal Bonding.[4]

## C.   Appellants' Remaining Arguments

Appellants' remaining arguments and assertions of error by
the Bankruptcy Court all depend on the existence of a trust fund

---

[3]   The Court finds the presence of a surety in Universal
Bonding to be a distinction without a difference.  Because the
surety in Universal Bonding had not yet performed its obligation
- paying the outstanding balances to the laborers and materialmen
- it did not have any subrogation rights.  See Universal Bonding,
960 F.2d at 376 (noting that surety cannot acquire subrogation
rights unless surety pays laborers and materialmen).  Thus,
Universal Bonding deals with the rights of the laborers and
materialmen themselves, not the rights of the surety.  See id.

[4]   Even if Universal Bonding controls and an equitable trust
exists, appellants still cannot recover because they failed to
identify and trace the trust funds as is required to establish
rights as a trust recipient.  See Farrell, 41 F.3d at 95;
Goldberg, 932 F.2d at 280.

and appellants' rights as trust recipients.  (<u>See</u> Coronation Br., Ex. A; Cooper Electric & Turtle Br. at 1-2.)  Because the Court finds that the Bankruptcy Court correctly concluded that a trust does not exist and appellants have not established their rights as trust recipients, the Court will affirm the Bankruptcy Court's grant of summary judgment to KI, Kullman, and Interchange on the remaining counts.

## CONCLUSION

The Court, for the reasons stated supra, will affirm the Bankruptcy Court's 1-4-08 Order.  The Court will issue an appropriate order.

s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

Dated: December 1, 2008